**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| Darren Scott Matloff, | § | Case No. 19-44253-mxm-7 |
| | § | |
| Debtor. | § | |
| | § | |
| Triumphant Gold Limited, | § | Adv. No. 19-04127-mxm |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| Darren Scott Matloff, | § | |
| Defendant. | § | |

**<u>MOTION TO COMPEL DISCOVERY RESPONSES</u>**

## TABLE OF CONTENTS

**I.** PRELIMINARY STATEMENT ........................................................................ 1

**II.** BACKGROUND ............................................................................................ 2

    A.    The Adversary Proceeding............................................................ 2

    B.    Matloff's Discovery Requests....................................................... 3

    C.    TGL's Original Responses............................................................ 4

    D.    TGL's First Amended Responses ................................................. 6

    E.    The Second Amended Responses ................................................. 7

    F.    Other discovery in this adversary proceeding............................... 9

**III.** RELIEF REQUESTED .............................................................................. 10

**IV.** ARGUMENT ............................................................................................ 10

    A.    TGL's "vague and ambiguous" objections are unfounded. .......... 11

    B.    The Requests are not "overly broad and unduly burdensome.".... 12

    C.    "Marshaling" and "contention interrogatory" are not legitimate bases for refusal to answer interrogatories.................. 14

    D.    TGL's incomplete and evasive responses to interrogatories do not represent a good faith effort to respond to discovery. ............ 16

    E.    TGL must disclose whether any responsive document or information has been withheld....................................................... 20

    F.    TGL must provide a privilege log................................................. 21

    G.    TGL cannot unilaterally refuse to search for documents responsive to legitimate discovery requests................................. 22

**V.** REQUEST FOR ATTORNEY'S FEES AND EXPENSES ........................... 23

**VI.** PRAYER ................................................................................................. 24

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, made applicable herein by Federal Rule of Bankruptcy Procedure 7037, Darren Scott Matloff ("*Matloff*") hereby moves the Court for an order compelling Triumphant Gold Limited ("*TGL*") to respond to and comply with certain written discovery requests in this adversary proceeding.  In support hereof, Matloff respectfully states as follows:

## I.
## PRELIMINARY STATEMENT

1.       The relationship between TGL and Matloff formally began in the summer of 2016, when Matloff guaranteed $10 million in loans TGL made to Rooftop Group International Pte. Ltd. ("*Rooftop Singapore*").  In July 2027, TGL loaned another $10 million, followed by another $1.25 million in August 2017.  Originally advanced at an interest rate of 15% per annum, the annual interest charges on these loans climbed quickly to 48% and later 60% following the occurrence of various defaults.

2.       Nevertheless, from September 2016 to March 2018 TGL was repaid $17,346,104—over 80% of it is original principal balance.  During that same period, TGL was paid $5,013,483 in regular and default interest, for a total of $22,359,588—*over a million dollars more than what TGL originally loaned*.

3.       Despite having recovered the bulk of its principal (and more than its original investment, measured in nominal dollars), TGL has nevertheless led the charge against Matloff and the Rooftop Entities defined below), including going so far as to agree to fund the efforts of the chapter 7 trustee's activities (through counsel shared by TGL and the trustee).  Now TGL seeks to except its remaining debt from Matloff's discharge and, alternatively, to deny Matloff's discharge entirely.  In doing so, TGL stands alone among the creditors of Rooftop—some of which are owed far more than TGL and most of which recovered *none* of their claims prior to the bankruptcy filings.

4.       TGL has taken extensive discovery in the last several months and examined Matloff under oath on multiple occasions.  Despite months of discovery, multiple conferences, and two rounds of amended discovery

responses, however, TGL still finds itself unable to give a direct answer to a direct question. With Matloff's own future hanging in the balance as TGL seeks to have tens of millions of dollars in business debts declared nondischargeable, Matloff is in need of the Court's assistance to compel TGL to supplement its responses or, by overruling TGL's discovery objections, to bind TGL to the answers given.

## II.
## BACKGROUND

### A.   The Adversary Proceeding

5.   This motion arises in the above-styled adversary action TGL instituted against Matloff (the "***Adversary Action***"), through which TGL seeks to deny Matloff's discharge or, at minimum, to except  TGL's debt from that discharge. On December 6, 2019, TGL filed an Adversary Complaint that was allegedly based primarily upon Matloff's actions in the bankruptcy cases of Rooftop Singapore, Rooftop Group USA, Inc. ("***Rooftop USA***"), and Rooftop Group Services (US), Inc. ("***Rooftop Services***" and, collectively, the "***Rooftop Entities***").

6.   TGL's Complaint casts a wide net—invoking arguments for the denial of Matloff's discharge based on multiple subsections of § 523 and § 727.  By its Complaint, TGL would have Matloff remain personally liable for tens of millions of dollars in business debts that he cannot possibly hope to repay in his lifetime.  The Complaint thus strikes at the heart of Matloff's good faith effort to submit himself to the bankruptcy process and obtain the discharge necessary to allow him to start his life over again following the collapse of the successful retail business to which he devoted more than fifteen years of his life.

7.   Rather than basing its claims on specific events, acts, or financial statement, TGL mixes and mingles claims of false representations with allegations of contract breaches and allegedly fraudulent transactions that Matloff has previously explained in sworn testimony.  The alleged claims asserted by TGL largely just recite statutory language from sections 523 and 727 of the Bankruptcy Code.

8.     In addition, much of the critical thesis of TGL's argument ignores the undeniable fact that, from 2016 to 2018, Matloff and Rooftop Singapore relied on a chief financial officer (Thian Chew) who was also a principal member of one of their largest creditors.  Email correspondence shows that Mr. Chew and TGL did not maintain an arms' length distance during his tenure, but in fact corresponded in ways that strongly suggest that Mr. Chew was serving creditor interests at the same time he was serving as an officer of Rooftop Singapore.

**B.     Matloff's Discovery Requests**

9.     The relief sought in the Complaint can be broadly divided in three categories: (1) exceptions to discharge under § 523(a), (2) denial of discharge under § 727(a) based on acts by Matloff in his case or one of the Rooftop Entities' cases, and (3) denial of one of Matloff's claimed exemptions under § 522(l).

10.     TGL's objections to discharge under § 523(a) are combined into <u>Count 1</u> of the Complaint, in which TGL seeks an exception to discharge of debts for—

(a)     money obtained by false pretense, false representation, or fraud under § 523(a)(2)(A);

(b)     money obtained by false financial statement under § 523(a)(2)(B);

(c)     fraud, embezzlement, or larceny under § 523(a)(4); and

(d)     willful or malicious injury under § 523(a)(6).

Notably, none of the claims indicate the *amount* of the debt that TGL seeks to except from discharge under each of these statutory provisions.

11.     Turning to <u>Count 2</u>, TGL seeks to deny Matloff's discharge in its entirety under each of § 727(a)(2) (transfer, destruction, or concealment of property) and § 727(a)(3) (concealment, destruction, or failure to preserve records).  In <u>Counts 3</u>, <u>4</u>, and <u>5</u>, TGL invokes § 727(a)(7) to deny Matloff's discharge based upon allegations of missing property, insufficient records

and false oaths under §§ 727(a)(2), (3), and (4) in the cases of Rooftop Singapore, Rooftop Services, and Rooftop USA.

12.     The Counts themselves do not set out the factual allegations specific to each individual claim (e.g., *which* allegations describe an alleged false representation versus an act of embezzlement), but instead contain just a restatement of the act described in the corresponding statutory provision.

13.     Given that the denial of even a portion of the discharge would leave Matloff exposed to ongoing liability for millions of dollars in business debts incurred by the Rooftop Entities, the Requests are predominantly focused on identifying the factual bases for TGL's claims under §§ 523 and 727. Accordingly, on February 24, 2020, Matloff served his *First Set of Interrogatories and Requests for Production of Documents* (the "***Requests***") to TGL to obtain the needed clarification. *See* Exhibit A. The Requests contained 19 interrogatories (referred to herein as "ROG 1," ROG 2," etc.) and 17 requests for production of documents (referred to herein as "RFP 1," "RFP 2," etc.). These Requests were narrowly tailored to explore specific allegations and claims asserted by TGL in the Complaint.

## C.     TGL's Original Responses

14.     After requesting a few brief extensions of time to respond, on April 10, 2020, TGL provided its answers and objections (the "***Original Responses***") to the Requests. *See* Exhibit B. Running to more than 30 pages in length, the Original Responses assert a series of "general objections" ostensibly applicable to all of the Requests. In addition, TGL's response to each Request is preceded by a lengthy series of repeating objections to the particular Request, including objections that the Requests were overly broad and unduly burdensome, that they improperly required TGL to "marshal" its evidence, and that responsive information was equally available to Matloff as to TGL. In addition, TGL's responses to interrogatories were unverified by counsel or TGL.

15.     Notwithstanding its voluminous objections, TGL nevertheless provided answers to the substantial majority of the Requests. Several of these answers, however, only offered up "laundry list" of alleged bad acts that did not necessarily bear relation to the Request to which it responded.

For example, in response to ROG 1, which sought identification of each "false pretense, false representation, and act of fraud" for purposes of § 523(a)(2)(A), the Response—

>   (a)   identifies alleged representations without specifying who made the representation (*e.g.*, "Representations through Agency Agreements and otherwise that Rooftop USA acted as agent for Rooftop Services and/or Rooftop Singapore…");
>
>   (b)   presents sentence fragments without context (*e.g.*, "pass through of all assets to Rooftop Singapore");
>
>   (c)   presents allegations of TGL's own beliefs (*e.g.*, "Credit extended by TGL was to be used to support the proven, existing product lines…").
>
>   (d)   makes generalized references to "multiple covenants; indemnities; guarantees; pledges."

16.    Further confusing the substance of these "laundry list" Responses, TGL then incorporated them by reference in subsequent Interrogatories, such as in its Responses to ROG 5 (acts of embezzlement) and ROG 6 (acts of larceny).  The net effect of these Responses is a confusing morass of allegations that, instead of clearly identifying those bad acts that TGL believes to constitute a false pretense, or fraud, or embezzlement, or larceny, TGL has left Matloff with the proverbial "data dump" from which Matloff and the Court must divine TGL's intentions.  As a result, Matloff is left to speculate whether each act identified in the answers to ROGs 1-4 as an alleged false representation or fraudulent act might also be an alleged act of embezzlement or larceny.

17.    Heeding the admonition of this and other courts that parties should always endeavor first to resolve discovery disputes informally through the meet-and-confer process, on April 15, 2020, Matloff sent a letter (the "*April 15 Letter*") to TGL identifying several deficiencies in TGL's Original Responses and asking TGL withdraw its improper objections and produce all responsive documents by Wednesday, April 22, 2020. *See* Exhibit C. After TGL initially proposed to confer in early May, the parties agreed to confer on April 27, 2020.

Page 5

### D. TGL's First Amended Responses

18.     One day before the meet-and-confer call, TGL delivered amended, but still unverified, responses and objections (the "***First Amended Responses***") to the Requests.  *See* Exhibit D.

19.     Although the First Amended Responses did not generally alter the substantive portions of TGL's responses to the Requests, they included several changes to the blanket objections that began each substantive response.  In particular,

> (a)     TGL withdrew its "marshaling" objection, replacing it with a largely similar claim that it should not be required to respond to a "contention interrogatory."

> (b)     TGL objected to several Requests as "disproportional to the needs of the case."

> (c)     TGL objected to several Requests as "seeking counsel's legal opinion of the application of the Bankruptcy Code to the facts."

> (d)     In response to several of the RFPs, disclosed that "it has not conducted a search specific to these requests."

> (e)     The "laundry list" Responses (and the incorporation of those lists in response to other Interrogatories) were largely preserved.

20.     Nevertheless, on April 27 the parties proceeded with their discovery conference, the result of which was a timeline and list of action items for each side.  *See* Exhibit E.  Among other "action items" discussed on that call, Matloff asked TGL to—

> (a)     obtain verified signature for interrogatories;

> (b)     confirm production of a spreadsheet identifying the transactions referred to in ROG 13 and ROG 16;

> (c)     determine whether a "cut off" date can be identified as the last date on which TGL claims to have extended, renewed, or refinanced credit for purposes of § 523(a)(2);

(d)     identify each "statement in writing" that TGL alleges as the basis of a claim under § 523(a)(2)(B).

(e)     confirm no *nonprivileged* documents have been withheld from production on the basis of any asserted objections;

(f)     identify any alleged acts of embezzlement (ROG 5) and larceny (ROG 6) separately from alleged acts of false pretense, false representation, and fraud (ROG 1-4); and

(g)     produce documents responsive to RFP 2-5 (due diligence documents) upon execution of a mutual confidentiality agreement or otherwise.

21.     To resolve one of TGL's objections to RFP 10 (communications between TGL and Polar), Matloff also narrowed the scope of the Request to seek only communications with Thian Chew.

22.     Matloff's counsel addressed its issues with TGL's objections in detail at that conference, specifically raising the *Heller* decision and its requirements for how discovery is to be properly conducted. *See Heller v. City of Dallas*, 303 F.R.D. 466 (N.D. Tex. 2014). For example, Matloff's counsel explained that TGL had not made clear whether or not TGL was withholding anything based upon its objections (as required by Fed. R. Civ. P. 34(b)(2)(C)), and that "vague and ambiguous" objections alone were not sufficient without further explanation. Matloff's counsel also clarified explicitly that a reference to § 523(a)(4) in RFP 16 (requesting all "statements in writing") was a typographical error, and that Request should be understood to refer instead to § 523(a)(2).

23.     On May 7, 2020, the parties conferred again, this time for over an hour and a half, following which TGL committed to provide a *second* set of amended responses and objections to the Requests.

## E.     The Second Amended Responses

24.     On May 22, 2020, TGL delivered to Matloff its second amended responses and objections (the "***Second Amended Responses***") to

the Requests together with a supplemental production of documents.  *See* Exhibit F.

25.     Despite having participated in nearly three hours of discovery conferences spanning two separate meet-and-confer calls, TGL substantially reaffirmed its litany of blanket and specific objections and again failed to indicate whether information or documents are being withheld on that basis. A comparison of TGL's Amended Responses to its Second Amended Responses reveals that—

    (a)    TGL affirmed nearly all of its prior objections to each Request.

    (b)    TGL affirmed its decision to describe allegedly false representations and other alleged "bad acts" in largely generalized terms lacking any specificity as to precisely *what* was said by *whom*, *where* precisely the statement could be found, and *why* TGL believed it to be false.

    (c)    TGL affirmed its decision not to even run searches specific to certain of the Requests.

    (d)    TGL affirmed its decision to answer interrogatories pertaining to allegations of embezzlement and larceny solely by reference to its answers to interrogatories pertaining to allegations of fraud and false statements.

    (e)    Ignoring Matloff's explicit clarification of an otherwise obvious typographical error, TGL affirmed its prior response to RFP 16, claiming to be "unable to respond to this request after a good-faith inquiry because § 523(a)(4) does not use the phrase 'statements in writing.'"

26.     What remains is a laundry list of allegations with no apparent effort made to link answers to interrogatories and, by extension, to specific causes of action asserted against Matloff.  The extensive reservations of rights invoked by TGL make it impossible to determine with any certainty precisely what allegations the Complaint was based upon or whether TGL has disclosed all known allegations.

27.     TGL has failed to properly answer the requests for production and interrogatories and continues to assert improper objections specifically denounced in *Heller*. Accordingly, Matloff requests that this Court enter an Order overruling TGL's objections to Requests and compelling TGL to provide complete answers to the questions posed.

**F.     Other discovery in this adversary proceeding.**

28.     Matloff's own responses to the discovery propounded on him in this adversary proceeding stand in stark contrast to TGL's evasive, incomplete responses.  On February 4, 2020, TGL propounded its first set of interrogatories and requests for production of documents to Matloff.  Finding TGL's RFP 2 to be potentially overbroad in seeking all documents evidencing Matloff's "instructions to any bookkeeper or accountant," Matloff contacted TGL through counsel on February 24 and 25 to confer on the request and determine what was meant by the term "instructions" and whether TGL could be more specific in its request.  While TGL expressed a willingness to consider discrete search terms, it was unwilling or unable to state more precisely what it sought in this request.

29.     On March 5, 2020, Matloff provided responses and responsive documents to TGL's first discovery requests.  *See* Exhibit G.  Consistent with *Heller* and other applicable precedent, Matloff did not hide behind a wall of objections, but answered each question to the best of his ability based upon reasonable investigation and reasonably available information.   Matloff objected to one interrogatory, ROG 4, and later withdrew that objection and provided a response on May 22, 2020 following the parties' meet-and-confer conferences.  Matloff objected to two other interrogatories, ROG 6 and ROG 7, on the ground that he could not possibly explain whether it was reasonable for TGL not to have relied on "any statement" in a given document without knowing both the specific statement alleged to have been false and the manner of TGL's reliance (if any) on that statement.  Matloff also produced responsive, nonprivileged documents without objection to two of three RFPs, objecting to RFP 2 (which TGL later withdrew) for the reasons stated above.

30.     Matloff received no complaint or objection to his responses until more than seven weeks later when, the day before the parties' April 27

meet-and-confer, TGL for the first time raised objections to Matloff's discovery responses.[1]    By agreement, Matloff provided supplemental responses and produced some additional documents on May 22, 2020.  These responses included additional information based upon a receivables analysis newly-created to answer TGL's questions, as well as a response to an interrogatory to which Matloff had previously objected.  *See* Exhibit H.

31.    On June 9, 2020, TGL served Matloff with another round of discovery requests comprising at least 14 additional interrogatories, 23 additional document requests, and 73 requests for admission.  Those requests remain outstanding.

## III.
## RELIEF REQUESTED

32.    Matloff seeks an order under Rule 7037(a)(1) and (3) of the Federal Rules of Bankruptcy Procedure overruling TGL's objections to the aforementioned Requests and compelling TGL to provide the documents and information requested by Matloff in his Requests.

33.    As a practical matter, Matloff's counsel is of the belief that the deficiencies found in TGL's discovery responses are a function of the lack of basis for many of the claims asserted (e.g., embezzlement).  If that is the case, then certain responses may be sufficient, albeit needing to be broken out to align TGL's answers with Matloff's questions.  However, Matloff requires a ruling on TGL's objections so that he may invoke the protections of the exclusionary rule if additional documents are subsequently produced. *See* FED. R. CIV. P. 37(c)(1).

## IV.
## ARGUMENT

34.    "Discovery by interrogatory requires candor in responding.... The candor required is a candid statement of the information sought or of the fact that objection is made to furnishing the information.  A partial answer by a party reserving an undisclosed objection to answering fully is not

---

[1] Notably, in that April 26 letter TGL withdrew RFP 2, which had been the subject of Matloff's earlier meet-and-confer emails and subsequent objection.

candid. It is evasive." *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613 , 616-17 (5th Cir. 1977).

35. The Federal Rules of Civil Procedure dictate that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless failure was substantially justified or harmless." FED. R. CIV. P. 37(c)(1). Rule 37(c) is "a self-executing" and "automatic sanction" that "provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence … at trial, at a hearing, or on a motion, such as one under Rule 56." FED. R. CIV. P. 37(c) advisory committee's note (1993). TGL has not stated in its Original Responses, Amended Responses, or Second Amended Responses whether it is withholding documents, and thus Matloff is unable to know whether or not such documents exist at all. See FED. R. CIV. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest."). Accordingly, Matloff requests that this Court overrule TGL's objections to Matloff's Requests.

36. The scope of permissible discovery under Rule 26 is broad by design, and may extend to "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Bankr. P. 26(b)(1). TGL's objections are not only without merit, but fly in the face of the *Heller* decision and other applicable case law that provided detailed guidelines for how to properly respond to discovery requests.

A.   **TGL's "vague and ambiguous" objections are unfounded.**

37. First, in its Second Amended Responses, TGL continues to object to ROGs 2, 8, 9, 11, 14, and 18 as "vague and ambiguous" without explaining TGL's understanding of the allegedly "vague and ambiguous" request. "[I]f part or all of an interrogatory is allegedly vague and ambiguous, the responding party, to comply with the Federal Rules, must, if possible, explain its understanding of the allegedly vague and ambiguous terms or phrases and explicitly state that its answer is based on that understanding."

*Heller v. City of Dallas*, 303 F.R.D. 466, 492 (N.D. Tex. 2014). Despite hours of calls and a detailed letter explaining this, TGL has not withdrawn the objection nor amended its responses based on the clarifications given by Matloff. *See* Exhibit F. TGL's failure to correct its clearly deficient responses after repeated conferences shows that TGL's refusal to comply with its discovery obligations is intentional.

38.     Similarly, TGL continues to answer ROGs 2, 8, 9, 11, 14, and 18 with a "subject to" list of boilerplate objections, including the "vague and ambiguous" objection. This is likewise impermissible under *Heller*, as "making an objection to a request as vague and ambiguous, without more, and then fully answering the interrogatory or promising production of all documents responsive to the request 'subject to' the vagueness and ambiguity objection betrays that the objection was made reflexively and without a factual basis." *Id.* at 488. TGL's objections are therefore without merit and should be overruled.

**B.     The Requests are not "overly broad and unduly burdensome."**

39.     TGL objects that each of ROGs 1-2, 4-15, and 17-18 is "overly broad and unduly burdensome" because, according to TGL,

> [i]t requires TGL to respond to a contention interrogatory[2] while discovery is still ongoing and because to require a full response at this time is disproportional to the needs of the case, in particular considering Mr. Matloff's relative access to his own statements and his personal knowledge of the falsity of statements when made and/or the details of his own surreptitious activity.

*See* Exhibit F. The sheer repetition of this objection underscores its boilerplate nature, as does the fact that TGL fails each time to "show specifically *how* each interrogatory or document request is overly broad, unduly burdensome, or oppressive." *Heller v. City of Dallas*, 303 F.R.D. at 490 (emphasis added). Instead, TGL makes only a generalized reference to the alleged disproportionality of the request and suggests that Matloff has

---

[2] TGL's claim that certain of the Requests are contention interrogatories is addressed below.

"access to his own statements and [ ] personal knowledge of the falsity of statements when made."

40. The proportionality of a discovery request is determined by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit," *see* Fed. R. Civ. P. 26(b)(1), and it is difficult to conceive of higher stakes than a challenge to a chapter 7 debtor's discharge. "The denial of a discharge is one of the harshest and most punitive sanctions in bankruptcy, and must not be undertaken lightly." *In re Crumley*, 428 B.R. 349, 367 (Bankr. N.D. Tex. 2010) (citing *Washington 1993, Inc. v. Hudson (In re Hudson)*, 420 B.R. 73, 100 (Bankr. N.D.N.Y. 2009)). It is, as some court have observed, the "death penalty of bankruptcy"—"the most draconian and punitive of measures in the Code." *Washington 1993, Inc. v. Hudson (In re Hudson)*, 420 B.R. 73, 100 (Bankr. N.D.N.Y. 2009).[3]

41. As for resources, TGL's founder Danny Yee was "a pre-IPO partner" at the investment bank of Goldman Sachs, from which he retired to establish TGL. *See* Transcript of August 1, 2019 Hearing, at 16:1-4. Matloff, by comparison, was wiped out by the collapse of the Rooftop Entities and, as his bankruptcy disclosures reveal, has minimal resources. The benefit of the information requested is manifest—aside from enabling Matloff to mount a proper defense, his discovery requests aim to clarify and narrow the scope of legitimate issues remaining for trial. Given the enormity of the relief TGL seeks in this matter, it is difficult conceive of a request for relevant information that could be considered to unduly burden TGL.

42. Furthermore, "*You know what you did wrong*" is not an acceptable answer to an interrogatory, nor is any defendant in any action

---

[3] For this reason, exceptions to discharge are construed narrowly construed against the creditor and in favor of the debtor. *See*, *e.g.*, *Fezler v. Davis*, 194 F.3d 570, 573 (5th Cir. 1999), *In re Boyle*, 819 F.2d 583, 588 (5th Cir. 1987). It follows logically that a debtor should be afforded a full and fair opportunity to investigate and test challenges to the discharge and to discover potentially exculpatory evidence that may be in the possession of the one challenging the discharge.

required to figure out for himself what actions or events form the basis of a plaintiff's claim. *Compare N. Am. Catholic Educ. Programming Found., Inc. v. Womble, Carlyle, Sandridge & Rice, PLLC*, 887 F. Supp. 2d 78, 88 n.7 (D.D.C. 2012) ("These facts, however, do not relieve plaintiff from its responsibility to properly plead its complaint and put defendants on notice of the claims against them. Pleadings should not boil down to: 'You did something wrong. You know what you did wrong. Now look through your files and refresh your memory.'"); *see also Ledesma v. D.R. Horton, Inc.*, No. SA-08-CA-128-OLG, 2009 U.S. Dist. LEXIS 140009, at *11 (W.D. Tex. Jun. 29, 2009) ("Plaintiff is suing the defendant and has been asked straightforward questions regarding the factual basis of his suit. These interrogatories go to the heart of plaintiff's claim and, consequently, the heart of defendant's defense.").

43.     Accordingly, TGL's objections should be overruled and TGL ordered to provide complete answers to each interrogatory.

**C.     "Marshaling" and "contention interrogatory" are not legitimate bases for refusal to answer interrogatories.**

44.     In response to TGL's Original Requests, Matloff in his April 15 Letter explained the problem with objections of this type.

> Just as I stated in a July 29, 2019 letter responding to TGL's discovery responses in the Rooftop Group International Pte. Ltd. case (correspondence that was prompted by similar deficiencies), this type of objection is inappropriate, as the marshaling of evidence that supports a party's contentions *is entirely the point of discovery. See, e.g., Eubank v. Lockhart Indep. Sch. Dist.*, 2016 U.S. Dist. LEXIS 194780, *9 (W.D. Tex. Nov. 08, 2016) (rejecting an objection to being required to marshal evidence, holding that "[i]t is not overly burdensome to expect a plaintiff to identify the specific acts that caused her harm").

*See* Exhibit C. In response, TGL replaced the improper marshaling objection in its Original Reponses with a new boilerplate objection that each interrogatory "requires TGL to respond to a contention interrogatory while discovery is still ongoing." TGL thus makes the same objection using a different pattern of words, but the objection remains improper.

45.    "An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact…" Fed. R. Civ. P. 33(a)(2).  As the advisory committee notes to Rule 33 observe, "they can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery." Fed. R. Civ. P. 33 advisory comm. n. (1970); *see also Id.* advisory committee n. (2007) (revising the rule to make clear that "[o]pinion and contention interrogatories are used routinely").  If a claim lacks an evidentiary basis, TGL should dismiss that claim in accordance with Federal Rule of Bankruptcy Procedure 9011.  What TGL *cannot* do is maintain claims against Matloff while refusing to identify the specific allegations or produce the evidence to support such claims.

46.    While the rule does permit a court to postpone a party's response to a contention interrogatory until near the end of discovery, in this case TGL should require no such additional time.  As a reminder, since April 2019, TGL has (i) propounded multiple document requests in this and the Rooftop Entities' bankruptcy cases; (ii) taken the oral deposition of Darren Matloff; (iii) examined Matloff under oath in more than one § 341 creditor meeting; and (iv) cross-examined Matloff under oath at an evidentiary hearing on August 1, 2019.[4]   In addition, TGL has been provided extraordinary access to the historical books and records of Matloff and the Rooftop Entities, including the "Rooftop Data Room"—a massive electronic database of Rooftop financial records contained with an detailed architecture of organized folders and subfolders—that Matloff made available to TGL.

47.    TGL has had ample opportunity to uncover evidence – if any – to support its claims, not only in Matloff's case but in the various other Rooftop Entities' bankruptcy cases.  If evidence exists to support TGL's contentions, TGL should certainly have it, and it is certainly discoverable in the Adversary Action.

48.    At the same time, TGL is represented by experienced counsel who knows the legal distinctions between a false pretense under § 523(a)(2), a false "statement in writing," embezzlement, and larceny.  TGL's objections

---

[4] All of this is in addition to the discovery TGL has obtained in other court and arbitration proceedings in Singapore and information obtained by TGL in the normal course of the Rooftop Entities' business in 2016-2018.

should be overruled and TGL compelled to give a direct answer to each of Matloff's Interrogatories.

**D.    TGL's incomplete and evasive responses to interrogatories do not represent a good faith effort to respond to discovery.**

49.    Even aside from the litany of objections that accompany them, TGL's Second Amended Responses to Matloff's interrogatories are purposefully designed to avoid giving clear, binding answers to clear, *necessary* questions.  If a trial in this matter is to have any meaning (and if it is to be completed in anything less than several days' court time), TGL must be ordered to amend and restate its interrogatory Responses in such a way as to give plain, direct answers to the questions presented.

50.    For example, the first four interrogatories are directed to claims that TGL's debt should be excepted from discharge based upon one or more types of alleged fraudulent conduct.

> (a)    ROG 1 asks TGL to "[i]dentify each false pretenses, false representation, and act of actual fraud that you contend renders Matloff's debt to TGL nondischargeable under 11 U.S.C. § 523(a)(2)(A)."
>
> (b)    ROG 2 asks TGL to identify all allegedly false "statements in writing" for purposes of § 523(a)(2)(B).
>
> (c)    ROG 3 and ROG 4 ask TGL to identify each alleged act of "fraud or defalcation while acting in a fiduciary capacity" actionable under § 523(a)(4).

51.    Instead of providing the "who, what, when, where, and how" of each alleged act of fraud, however, TGL's Responses are a scattershot of alleged representations ("Represent Rooftop USA acted as an agent…"), fragments ("pass through of all assets to Rooftop Singapore"), and covenants and future promises ("contain multiple covenants; indemnities; guarantees…") that leave the reader no better informed than before.  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (affirming the necessity of disclosing "the who, what, when, where, and how" to support fraud allegations); *Nibbi v. Kilroy (In re Kilroy)*, 357 B.R. 411, 424 (Bankr. S.D. Tex. 2006) (holding the absence of one of the "who, what, when, where,

Page 16

and how" allegations is fatal to a § 523(a) claim); *see also Red Honor Ventures, Ltd. v. Edmonds (In re Edmonds)*, 2019 BL 372284, \*9, Adv. No. 14-40375-mxm (Bankr. N.D. Tex. Sep. 30, 2019) ("A debtor's promise relating to a future action that does not purport to depict a current or past fact does not qualify as a false representation or false pretense.").

52.     In responding to ROG 3, TGL answers that "Matloff was acting in a fiduciary capacity," but does not say *to whom* TGL believed this duty was owed.  *Compare Bell v. Berry (In re Berry)*, 174 B.R. 449, Bankr. N.D. Tex. 1994) (observing that § 523(a)(4) requires showing, among other things, that "the debtor had a fiduciary relationship *with the creditor* at the time at the time the debt was created") (emphasis added).  TGL's answer to ROG 3 largely suggests that TGL is focused on Matloff's fiduciary relationship *to Rooftop Singapore*.  If TGL also claims that Matloff owed a fiduciary duty to TGL, the Response is incomplete.  ROG 4 is similarly incomplete for failing to disclose the "who, what, when, where, and how" of each alleged act of fraud.

53.     The next three interrogatories move on from the topic of alleged fraud and false representations to discover from TGL how its debt is one for embezzlement, embezzlement, larceny, or a "willful and malicious injury" as described in §§ 523(a)(4) and (6).  In responding to ROGs 5-7, however, TGL largely just points to its responses to ROGs 1-4 (and, for ROG 6 and ROG 7, the responses to the preceding Requests).

54.     But the concepts of embezzlement and larceny are distinct acts defined by wholly separate elements.  *See, e.g.*, *Cowin v. Countrywide Home Loans, Inc. (In re Cowin)*, 864 F.3d 344, 350 (5th Cir. 2017) (stating that larceny involves "the fraudulent and wrongful taking away of the property of another" paired with "the intent to convert it to the taker's use and with the intent to permanently deprive that owner of such property"); *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998) (describing embezzlement for purposes of § 523(a)(4) as the "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come").  And both embezzlement and larceny are wholly distinct from "willful or malicious injury" under § 523(a)(6), which requires showing of an injury "where there is either an objective

substantial certainty of harm or a subjective motive to cause harm." *Free v. Winborne (In re Free)*, 761 Fed. Appx. 314, 318 (5th Cir. 2019).

55.     Against this backdrop, TGL's Second Amended Responses are deliberately confusing insofar as they offer the same laundry-list response to interrogatories that seek information on mutually exclusive topics (*e.g.*, larceny *versus* embezzlement *versus* fraud). By its conduct, TGL would have Matloff guess for himself which answers respond to which interrogatory.

56.     Moreover, these interrogatories are critical to understanding the *amount* of the debt or debts that TGL claims to be nondischargeable, because §§ 523(a)(4) and (6) serve to except from discharge only debts for the actual amount embezzled or stolen by larceny, or for the damage incurred by a willful and malicious injury. *See*, *e.g.*, *Telmark, LLC v. Booher (In re Booher)*, 284 B.R. 191, 214 (Bankr. W.D. Pa. 2002) (nondischargeable debt under § 523(a)(4) is limited to amounts actually embezzled); *Matter of Thomas,* 729 F.2d 502 (7th Cir. 1984) (holding that, upon a showing that a "defalcation" has occurred for purposes of § 523(a)(4), only that portion of the trust *res* inappropriately expended is nondischargeable). They would not serve to render Matloff's debts arising from his personal guaranties to be nondischargeable unless TGL can show that portion of its debt to have been obtained through the complained-of conduct. *See*, *e.g.*, *E.E. Norwood & Flat Top Dairy Go Round, LP v. Hicks (In re Hicks)*, 384 B.R. 443, 453-54 (Bankr. N.D. Tex. 2008) ("The evidence does not link a specific loss with an identifiable misrepresentation or series of misrepresentations."). To the extent TGL contends that Matloff stole, embezzled, or obtained by fraud or defalcation specific sums of money, TGL must therefore be compelled to provide standalone responses to each interrogatory so that Matloff and this Court can properly understand the scope of allegations raised in this adversary proceeding.

57.     Turning to Count 2, TGL seeks to deny Matloff's discharge in its entirety under each of § 727(a)(2) (transfer, destruction, or concealment of property) and § 727(a)(3) (concealment, destruction, or failure to preserve records). In Counts 3, 4, and 5, TGL invokes § 727(a)(7) to deny Matloff's discharge based upon allegations of missing property, insufficient records

and false oaths under §§ 727(a)(2), (3), and (4) in the cases of Rooftop Singapore, Rooftop Services, and Rooftop USA.

58.     Recognizing that a MORE subjective dispute may exist as to the sufficiency of records from which the Rooftop Entities' financial condition might be ascertained, Matloff deliberately framed ROG 8 in an effort to narrow the scope of trial by asking TGL to describe only any allegations that Matloff "concealed, destroyed, mutilated, or falsified" any records (or caused any Rooftop Entity to do so).

59.     After applying its standard blanket objections, TGL responded only that the available records are "woefully and suspiciously deficient," followed by a series of allegations of records that TGL deems insufficient or improperly missing.  Nowhere, however, does the Response identify a single document or record that TGL contends was *concealed*, *destroyed*, *mutilated*, or *falsified*.  To the extent TGL is withholding such information, it should be compelled to supplement this Response; otherwise, the objections should be overruled and TGL bound to concede that no such information exists.

60.     Similarly, Matloff recognizes a subjective dispute may exist as to whether Matloff and the various Rooftop entities transferred or removed any property, and therefore framed ROG 9 to determine the extent to which TGL contends that Matloff *destroyed*, *mutilated*, or *concealed* any such property (or caused any Rooftop entity to do so.  In its Response, TGL describes the reported decline in receivables volume, transactions that TGL may not have authorized, and the like, but does not identify a single dollar or asset that it contends was affirmatively destroyed, mutilated, or concealed. To the extent TGL is withholding such information, it should be compelled to supplement this Response; otherwise, the objections should be overruled and TGL bound to concede that no such information exists.

61.     ROG 14 seeks to drill down on precisely what allegedly false or fraudulent statements TGL claims to have relied upon in extending credit to the Rooftop entities under one or more side letters that the parties entered into in late 2017 and early 2018.  In response, TGL refers to and incorporates its response to ROG 12, which in turn refers to and incorporates the response to ROG 1, which is broader in its inquiry.  To the extent TGL is withholding

information about any representation that is not otherwise described in ROG 1, it should be compelled to supplement this Response; otherwise, the objections should be overruled and TGL bound only to the scope of this Response.

62. TGL's Response to ROG 16 is particularly frustrating because it continues to defy Matloff's specific request for clarification. In ¶ 38 of the Complaint, TGL alleges that, "[b]etween March 1, 2018 and August 25, 2019, Matloff willfully and maliciously transferred proceeds of purchase orders and receivables…totaling not an amount not less than $2,074,083.17," referencing a series of bank statements attached to the Complaint. Given the echoes of § 523(a)(6) in this allegation, Matloff asked TGL in ROG 16 to specify "whether the transfers totaling $2,074,083.17 comprise all withdrawals, transfers, and other debits" recorded in those statements.

63. Rather than confirm whether the $2.074 million tally referred to all of the transactions listed in referenced bank statements or merely certain transactions, TGL objected to the interrogatory, asserting that the documents "speak for themselves" and, in any event, asserted an amount "not less than" $2.074 million. As a result, Matloff still cannot ascertain whether or not TGL literally asserts that *every* transaction undertaken in an 18-month window of time is nondischargeable under § 523(a)(6). Matloff has repeatedly requested a spreadsheet identifying those transactions that add up to the $2.074 million, and TGL has thus far refused to comply. As Matloff is entitled to know precisely what transactions are alleged to have caused a "willful and malicious" injury, TGL must be ordered to supplement its response to ROG 16.

**E.    TGL must disclose whether any responsive document or information has been withheld.**

64. TGL also made no attempt to rectify its failure to state in its objections "whether any responsive materials [were] withheld on the basis of that objection." FED. R. CIV. P. 34(b)(2)(C), via FED. R. BANKR. P. 7034. According to the Federal Rules of Civil Procedure, "[a]n objection to part of a request must specify the part and permit inspection of the rest." FED. R. CIV. P. 34(b)(2)(C), via FED. R. BANKR. P. 7034. For example, every single

Page 20

one of TGL's responses includes one or more objections, but not a single one states whether or not responsive materials were withheld on the basis of those objections. This failure persisted through the Second Amended Responses, even though it was specifically addressed in both the Letter and the April 27 conference between the parties, indicating that TGL's obstreperous conduct is wholly deliberate.

## F.    TGL must provide a privilege log.

65.    TGL also objected to a number of requests on the basis of privilege. Specifically, a privilege objection is lodged to each of RFPs 1, 8, 10, 12-15, and 17 and ROGs 1-12, 17-19.  Matloff has requested that, to the extent TGL has withheld communications or other documents on the basis of any privilege (including under the common interest doctrine), TGL produce a privilege log in accordance with Federal Rule of Civil Procedure 26(b)(5). FED. R. CIV. P. 26(b)(5), via FED. R. BANKR. P. 7026.  Despite the expansive invocation of the privilege objection, TGL has failed to do so.

66.    Among these Requests, however, RFP 10 stands out.  In RFP 10, Matloff sought communications between any "TGL Entity" and any "Polar Entity" (later narrowed to communications between any TGL Entity and Thian Chew).  Email correspondence shows that Mr. Chew was routinely included in correspondence with TGL and Polar in his capacity as a representative of Polar, rather than the company.  In one jarring example, another TGL representative, Hiro Mukaibo, lays out TGL's strategy to Mr. Chew and other Polar representatives for an upcoming meeting scheduled with Rooftop in February 2018.  In his email, Mr. Mukaibo instructs Mr. Chew on *how* everyone is to participate at the meeting: "Tomo Thian you two accompany me for the first half.  ***Thian you come as Rooftop, just to clarify numbers***." *See* Exhibit I (emphasis added); *see also* Exhibit J.

67.    It is therefore of *critical* importance to this adversary proceeding to discover the full extent of the communications between TGL and Mr. Chew during his tenure as chief financial officer.  Like Exhibits I and J, other such communications may reveal that TGL was actually relying to a large degree on Mr. Chew—not Matloff—for information pertaining to Rooftop's finances and financial performance.  Moreover, such emails bear

directly on the credibility of one of TGL's principals, Danny Yee, who testified previously in deposition that he understood Mr. Chew not to have participated in communications between TGL and Polar pertaining to their collection efforts, and that Mr. Chew had recused himself from any further representation of Polar.

68.     TGL's invocation of the common interest and joint defense privilege as a defense to RFP 10, which seeks communications between TGL and Polar (including Thian Chew), makes this an issue of critical importance. Accordingly, in its April 15 Letter and subsequent meet-and-confer conferences, Matloff has requested a copy of any written agreement memorializing any common interest or joint defense between any TGL Entity and Polar Entity. Like many of Matloff's other requests, TGL has declined to comply, has not provided a copy of any such agreement, and continues to withhold documents on the basis of privilege without providing the a privilege as required by Rule 26(b)(5).

### G.     TGL cannot unilaterally refuse to search for documents responsive to legitimate discovery requests.

69.     Finally, and perhaps most egregious of all, TGL has expressly stated in numerous responses that it "has not conducted a search specific to these requests in light of the above objections." Specifically, this statement is made in the responses to RFPs 2-5, 8, and 10.  TGL cannot reasonably certify that there is a good faith basis for an objection (e.g., that the Request is "unduly burdensome") if TGL has not even conducted a search for responsive documents.  Moreover, the document categories left unexamined by TGL touch on some of the most critical issues raised in this adversary proceeding, some of which may be specifically exculpatory to Matloff.

70.     RFPs 2-5 and 8 seek documents relating to the scope and substance of any due diligence that TGL conducted prior to extending credit to Rooftop Singapore.  The reasonableness of a plaintiff's reliance is a critical element under § 523, and the nature, extent, and quality of any due diligence conducted by TGL is directly relevant to the reasonableness of TGL's reliance on any statements made by Matloff or any of the Rooftop entities.

71.     RFP 10, which seeks communications between TGL and Polar (and, in particular, Thian Chew) is similarly critical to the claims asserted in this adversary proceeding.  As illustrated by Exhibits I and J, TGL was in direct communication with Mr. Chew while he was also serving as Rooftop Singapore's chief financial officer.  If, as these communications show, Mr. Chew was taking instructions from Rooftop Singapore's lenders, it bears directly on the questions of Matloff's own alleged culpability as well as the reasonableness of any alleged reliance by TGL.  Further, to the extent TGL ever sought clarification from Mr. Chew about statements made by Matloff, Mr. Chew's responses may show that TGL was relying more on Mr. Chew that Matloff.  TGL must therefore be compelled to turn over *all* such communications for Matloff's examination, or else it must be presumed that more emails like Exhibits I and J exist.[5]

72.     TGL must be instructed to conduct the necessary searches and produce all responsive, nonprivileged documents and communications in its possession.  Failing that, Matloff is entitled to an inference that TGL was not relying on any particular statement of Matloff, but was relying instead on Mr. Chew, who served as an "inside man" to Polar and TGL during his tenure as chief financial officer.

73.     In light of all the aforementioned deficiencies in TGL's Second Amended Responses despite hours of phone calls and the Letter detailing said deficiencies, Matloff requests that this Court overrule TGL's objections.

## V.
## REQUEST FOR ATTORNEY'S FEES AND EXPENSES

74.     Rule 7037(a)(5)(A) provides that the Court must require the party whose conduct necessitated any motion to compel under the rule to pay the movant's reasonable attorney's fees and expenses incurred in making such motion unless such conduct was substantially justified. Matloff submits that TGL's conduct is not substantially justified and is merely dilatory and evasive litigation tactics designed to hinder, delay, and frustrate Matloff's discovery rights in this case. As set forth herein, TGL continues to assert

---

[5] Related to this, Matloff and the Court must have some assurance that, if so ordered, TGL actually turns over *all* responsive correspondence involving Mr. Chew and does not "curate" its production to eliminate emails in which Mr. Chew's role is in doubt.

objections that are not warranted by existing law, indicating its conduct is intentional.

75. Pursuant to the foregoing rules, following any ruling on this this motion, Matloff requests that TGL be ordered to pay Matloff's reasonable attorney's fees and expenses in connection with this motion.

## VI.
## PRAYER

WHEREFORE, Matloff requests that the Court enter an order (i) overruling TGL's objections in its Second Amended Responses; (ii) compelling TGL to serve supplemental answers to the Requests signed by a representative of TGL with personal knowledge of the information in those answers; (iii) allowing Matloff to invoke the Exclusionary Rule at trial as to any responsive information or documents that are not disclosed in those supplemental answers; (iv) awarding Matloff reasonable attorney fees and expenses incurred in connection with this motion; and (v) granting such other and further relief as the Court may deem just and proper.

Dated: June 22, 2020                    Respectfully submitted,

**SPECTOR & COX PLLC**              **REED SMITH LLP**

By: _/s/ Sarah M. Cox_                By: _/s/ Michael P. Cooley_
Sarah M. Cox (CA Bar No. 245475)   Michael P. Cooley (SBN 24034388)
Spector & Cox, PLLC                Devan J. Dal Col (SBN 24116244)
12770 Coit Road, Suite 1100        2850 N. Harwood St., Ste. 1500
Dallas, TX 75251                   Dallas, Texas 75201
T: 214-310-1321                    T: 469.680.4200
F: 214-237-3380                    F: 469.680.4299
sarah@spectorcox.com              mpcooley@reedsmith.com
                                  ddalcol@reedsmith.com

                                  *Attorneys for the Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 22, 2020, a true and correct copy of this document was served via email to counsel for TGL at the following addresses:

Katharine Battaia Clark
Email: kclark@thompsoncoburn.com

*/s/ Michael P. Cooley*
Michael P. Cooley

**CERTIFICATE OF CONFERENCE**

I hereby certify that, on the dates described in the foregoing document, the undersigned counsel participated in multiple conferences with counsel for TGL regarding the deficiencies in TGL's discovery responses and Matloff's demands for supplementation or clarification. In light of TGL's refusal to correct these deficiencies after twice amending its discovery responses, Matloff is informed and believes that further conference would not be practicable or productive, and believes that TGL opposes the relief requested herein.

*/s/ Michael P. Cooley*
Michael P. Cooley