**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| Darren Scott Matloff, | § | Case No. 19-44253-mxm-7 |
| | § | |
| Debtor. | § | |
| | § | |
| Triumphant Gold Limited, | § | Adv. No. 19-04127-mxm |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| Darren Scott Matloff, | § | |
| Defendant. | § | |

**FIRST SET OF INTERROGATORIES AND
REQUESTS FOR PRODUCTION OF DOCUMENTS
TO TRIUMPHANT GOLD LIMITED**

To: Triumphant Gold Limited, c/o Katherine B. Clark, Hedrick Kring PLLC, 1700 Pacific Avenue, Suite 4650, Dallas, TX 75201

Defendant Darren Matloff ("*Matloff*") hereby serves this first set of interrogatories and requests for production (collectively, the "*Discovery Requests*") on Triumphant Gold Limited ("*TGL*"), pursuant to Federal Rules of Civil Procedure ("*Civil Rules*") 26, 33, and 34, made applicable in this case by Federal Rules of Bankruptcy Procedure ("*Bankruptcy Rules*") 7026, 7033, and 7034.

TGL is directed to provide written responses to each Discovery Request, including to produce all documents responsive thereto, on or before **March 25, 2020**, which is thirty days from the date of service of these Discovery Requests. TGL is further directed to produce, at the offices of Defendant's counsel, Sarah M. Cox, Spector & Cox, PLLC, 12770 Coit Road, Suite 1100, Dallas, TX 75251, sarah@spectorcox.com, all documents that are responsive to the Discovery Requests and are in TGL's possession, custody or control, or that are in the possession, custody, or control of TGL's

counsel, agents, or representatives, or which could be obtained through reasonably diligent efforts. You are hereby advised that the documents produced and your sworn answers may be offered in evidence in connection with any proceeding in which such documents and answers may be admissible.

These Discovery Requests are continuing, and you are requested by way of supplemental answers hereto such additional information as you, or any other person acting on your behalf, may hereafter obtain that will augment or otherwise modify your answers given to the Discovery Requests below. Such supplemental responses are to be served upon this party immediately upon receipt of such information.

Dated: February 24, 2020

Respectfully submitted,

| **SPECTOR & COX PLLC** | **REED SMITH LLP** |
|---|---|
| By: */s/ Sarah M. Cox* | By: */s/ Michael P. Cooley* |
| Sarah M. Cox (CA Bar No. 245475) | Michael P. Cooley (SBN 24034388) |
| Spector & Cox, PLLC | Lindsey L. Robin (SBN 24091422) |
| 12770 Coit Road, Suite 1100 | Devan J. Dal Col (SBN 24116244) |
| Dallas, TX 75251 | 2501 N. Harwood St., Ste. 1700 |
| T: 214-310-1321 | Dallas, Texas 75201 |
| F: 214-237-3380 | T: 469.680.4200 |
| sarah@spectorcox.com | F: 469.680.4299 |
| | mpcooley@reedsmith.com |
| | lrobin@reedsmith.com |
| | ddalcol@reedsmith.com |
| | |
| | *Attorneys for the Defendant* |

## **CERTIFICATE OF SERVICE**

      I hereby certify that, on February 24, 2020, a true and correct copy of this document was served via email to counsel for TGL at the following address:

Katharine Battaia Clark
HEDRICK KRING, PLLC
1700 Pacific Avenue, Suite 4650
Dallas, TX  75201
Email:  KClark@HedrickKring.com

                                   */s/ Sarah M. Cox*
                                    Sarah M. Cox

# I.
# INSTRUCTIONS

1. Each interrogatory is addressed to TGL, along with any person or entity acting on behalf of TGL, including any officer, director, employee, agent, representative, investigator, consultant, or attorney of TGL.

2. For each Document produced, indicate each Discovery Request for Production to which it is responsive.

3. Whenever asked herein, the "knowledge" of any person includes hearsay known to such person and opinions of such person.

4. In answering any Discovery Request, please furnish all information which is available to you, including information in the possession of your agents, representatives, employees, investigators, attorneys, or anyone acting in their behalf or on your behalf and not merely such information known to your personal knowledge.

5. The Discovery Requests are to be regarded as continuing, and you are requested to provide, by way of supplemental answers thereto, such additional information as you, or any other person on your behalf, may hereafter obtain, which will augment, change, or otherwise modify your answers now given for any Discovery Request.

6. With respect to each Discovery Request to which a claim of privilege is asserted, separately state the following:

   (a) The type of communication, information or document to which a claim of privilege is being asserted;

   (b) The basis of any claim of privilege;

   (c) If work-product immunity is being asserted, identify the proceeding for which the document was prepared; and

   (d) With respect to each document or communication to which a claim of privilege is being asserted, state:

       (i) Its date;

(ii) The name, business address and present position of its originator(s) or author(s);

(iii) The position of its originator(s) or author(s) at the time the communication was made or the document was prepared;

(iv) The name, business address and present position of each recipient of the communication or document;

(v) The position of each recipient at the time the communication was made or document was prepared, and the time it was received; and

(vi) A general description of the subject of the communication or document.

7. With respect to any Discovery Request which is not fully answered in whole or in part due to lack of information or knowledge, inability to remember, loss or destruction or nonpossession of records or documents, identify the present or former employee(s), agent(s) or other person(s) whom you consider to have information, knowledge, or possession or control of documents containing information which is responsive to the Discovery Request. No part of a Discovery Request shall remain unanswered merely because an objection is interposed to another part of the Discovery Request.

8. Matloff reserves the right to pose additional Discovery Requests.

## II.
## DEFINITIONS

Capitalized terms used but not otherwise defined herein have the meanings assigned to them in the Complaint.

1. "Affiliate" has the meaning assigned to it in 11 U.S.C. § 101(2).

2. "Complaint" means that certain *Adversary Complaint* filed by TGL to commence the adversary proceeding styled *Triumphant Gold Limited*

Page 5

*v. Darren Scott Matloff*, assigned Adv. No. 19-04127 and pending in the United States Bankruptcy Court for the Northern District of Texas.

3. "July 2016 Loan Agreement" means that certain Loan Agreement, dated as of July 25, 2016, by and between TGL, the Debtor, Darren Scott Matloff, Asian Express Holdings, Ltd., and Gandiva Investments Ltd.

4. "Matloff" means Defendant Darren Scott Matloff.

5. "Polar" means Polar Ventures Overseas Limited.

6. "Polar Entity" includes Polar and any of its officers, directors, agents, affiliates, or employees (including Thian Chew and Alan Yamashita).

7. "Rooftop Singapore" means Rooftop Group International Pte. Ltd.

8. "Rooftop USA" means Rooftop Group USA, Inc.

9. "Rooftop Services" means Rooftop Group Services (US), Inc.

10. "TGL" means Triumphant Gold Limited.

11. "TGL Entity" includes TGL and any of its officers, directors, agents, affiliates, or employees (including Danny Yee, Hiro Mukaibo, and Tomo Kinouchi).

12. "Thian Chew" means the individual identified as Thian Chew in the July 2016 Loan Agreement.

13. "Person" or "persons" includes, without limitation, individuals, corporations, partnerships, limited partnerships, joint ventures, unincorporated associations, and all other governmental and non-governmental entities.

14. "You" and "your" refer to TGL, and shall include TGL's officers, directors, agents, and employees, and all persons acting on their behalf.

15. The term "document" or "documents" has the same meaning as the definition of writings, recordings and photographs in Rule 1001 of the Federal Rules of Evidence and includes all written and graphic matter, however produced or reproduced, of any kind or description, whether sent or received or neither, including originals, non-identical copies, and drafts, and both sides thereof, including but not limited to: letters, correspondence, contracts, agreements, books, journals, ledgers, statements, reports, studies, billings, invoices, worksheets, audits, balance sheets, income statements, checks, diagrams, diaries, calendars, recordings, instructions, lists, minutes of meetings, orders, resolutions, facsimile transmissions, electronic mail, computer files stored by any electronic means, and all other informal or formal writing or tangible things and any amendments or supplements to all of the foregoing, whether prepared by a party or another person.

16. The term "describe in detail" means to state each and every fact concerning the information requested by the interrogatory, including, without limitation, (a) the identity of each person having knowledge of each fact or opinion relating to the information requested, (b) the identity of each document reflecting or relating to the information requested, (c) the identity of all communications relating to the information requested, and (d) all relevant date and time periods.

17. The phrase "state the basis" means to state with specificity all facts supporting, contradicting, or otherwise relating to the subject matter of the interrogatory, and to identify all communications or documents relating to such facts, and all persons likely to have knowledge of such facts.

18. The term "communication" or any variant thereof means any contact between two or more persons, and shall include, without limitation, written contact by means such as letters, memoranda, telegrams, telecopies or telexes, or by any other document, and any oral contact such as face-to-face meetings and telephone conversations.

19. The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive; the singular includes the plural and the plural includes the singular; the use of a verb in any tense shall be construed as the use of the

verb in all other tenses whenever necessary to bring within the scope of the request documents that might otherwise be construed outside its scope.

20. The terms "reflecting," "referring," and "relating to," in addition to their customary and usual meaning, shall be construed in their broadest sense, and mean anything that, directly or indirectly, generally or specifically, regards, relates to, refers to, concerns, contains, constitutes, contradicts, evidences, embodies, comprises, reflects, mentions, identifies, states, deals with, comments on, responds to, describes, analyzes, or is in any way, directly or indirectly relevant to the subject.

21. "Each" includes the word "every" and "every" includes the word "each." "Any" includes the word "all" and "all" includes the word "any."

# III.
# INTERROGATORIES

1. Identify each false pretense, false representation, and act of actual fraud that you contend renders Matloff's debt to TGL nondischargeable under 11 U.S.C. § 523(a)(2)(A).

2. Identify each statement in writing respecting the Debtor's financial condition that you contend was false and therefore renders Matloff's debt to TGL nondischargeable under 11 U.S.C. § 523(a)(2)(B).

3. If you contend that Matloff at any time was "acting in a fiduciary capacity" (as used in 11 U.S.C. § 523(a)(4)) to TGL, describe the basis for that contention.

4. Identify with specificity each act of fraud or defalcation you contend occurred by Matloff while acting in a "fiduciary capacity" (as that phrase is used in 11 U.S.C. § 523(a)(4)) that renders Matloff's debt to TGL nondischargeable under § 523(a)(4).

5. Identify with specificity each act of "embezzlement" (as used in 11 U.S.C. § 523(a)(4)) that you contend renders Matloff's debt to TGL nondischargeable under § 523(a)(4).

6. Identify with specificity each act of "larceny" (as used in 11 U.S.C. § 523(a)(4)) that you contend renders Matloff's debt to TGL nondischargeable under § 523(a)(4).

7. Identify with specificity each act by which you contend Matloff caused a "willful and malicious injury" (as that phrase is used in 11 U.S.C. § 523(a)(6)) to TGL or any property of TGL that renders Matloff's debt to TGL nondischargeable under § 523(a)(6).

8. Describe with sufficient detail to permit their identification, all recorded information, including all books, documents, records, and papers, that you contend Matloff either concealed, destroyed, mutilated, or falsified or caused any Rooftop Entity to conceal, destroy, mutilate, or falsify.

9. Describe with sufficient detail to permit their identification, all property of Rooftop USA that you contend Matloff either destroyed, mutilated, or concealed or caused any Rooftop Entity to destroy, mutilate, or conceal.

10. Identify by date and amount each transfer of cash from Rooftop USA to Matloff that you contend was "a personal distribution based upon his ownership of Rooftop USA." See Complaint ¶ 16.

11. Identify with specificity each representation or statement regarding Asian Express that you contend was "misleading and false." See Complaint ¶ 17.

12. Identify with specificity each "misrepresentation[ ] and false statement[ ] regarding the Rooftop enterprise structure, financial condition, and projected performance" that you contend TGL relied upon. See Complaint ¶ 19.

13. Identify all of the transfers that you allege were made on or about March 26, 2018 and comprise "an additional $176,000 of payments to other creditors or insiders from Rooftop Singapore's charged account." See Complaint ¶ 37.

14. Identify with specificity each of the "additional representations (on which TGL relied) in order to induce TGL to enter into the Side Letters." See Complaint ¶22.

15. Identify all documents or communications that you contend support the allegation that "[b]etween February and April of 2018, Matloff falsely represented to TGL that he had additional funding arranged for Rooftop Singapore." See Complaint ¶ 26.

16. Specify whether the transfers totaling $2,074,083.17 comprise all withdrawals, transfers, and other debits recorded in Exhibits A-1 to A-18 or, if less than all, identify which withdrawals, transfers, and other debits.

17. If you contend that Matloff caused a "willful and malicious injury" (as defined in 11 U.S.C. § 523(a)(6)) to TGL or property of TGL,

identify with specificity the nature of the injury that was you contend Matloff intended or was substantially certain to cause to TGL or its property.

18. If you contend that "Matloff was arranging funding for Rooftop USA that was not used to repay TGL" (see Complaint ¶ 26), describe all such funding with sufficient detail to permit its identification.

19. Describe in detail standard internal processes employed by TGL and Aktis Capital to evaluate whether to make a loan to, or an investment in, a given company or business activity.

## IV.
## REQUESTS FOR PRODUCTION

1. All documents that TGL relied upon in preparing its answers to Interrogatory Nos. 1-19.

2. All "due diligence" requests for financial or other information made by any TGL Entity to any Rooftop Entity in connection with TGL's decision to extend loans under the July 2016 Loan Agreement or any subsequent agreement.

3. All documents received in response to the requests described in the foregoing Request.

4. All communications, including all "due diligence" requests for financial or other information, made by any TGL Entity to Matloff in connection with TGL's request for Matloff to personally guarantee repayment of Rooftop Singapore's debt to TGL, including any requests for updated personal financial statements made after the guarantee was provided.

5. All documents, including any personal financial statements or other records indicating the nature or value of Matloff's assets, liabilities, or net worth, received in response to the requests described in the foregoing Request.

6. All "investor presentations, management financial statements, audited GAAP financial statements, and third-party valuations" of Rooftop Singapore referred to in ¶15 of the Complaint.

7. All "management financial statements for Rooftop Singapore" referred to in ¶18 of the Complaint.

8. All internal communications, presentations, and documents prepared by or for TGL or Aktis in connection with TGL's decision to extend loans under the July 2016 Loan Agreement or any subsequent advance or extension of credit.

9. All communications between any TGL Entity and any Rooftop Entity pertaining to the Facility.

Page 12

10. All communications between any TGL Entity and any Polar Entity pertaining to the Facility.

11. All communications between any TGL Entity and Matloff pertaining to the Guarantee.

12. All documents evidencing "the representation that new money was coming into the business." See Complaint ¶ 22.

13. All documents evidencing "the written representation that Rooftop Singapore was owed more than $15 million in accounts receivable as of the January 2018 Side Letter." See Complaint ¶ 22.

14. All documents between February 2018 and April 2018 containing representations that "he had additional funding arranged for Rooftop Singapore." See Complaint ¶ 26.

15. All documents evidencing that, between February 2018 and April 2018, "Matloff was arranging funding for Rooftop USA that was not used to repay TGL." See Complaint ¶ 26

16. All "statements in writing" (as that phrase is used in 11 U.S.C. § 523(a)(4)) that you contend render Matloff's debt to TGL nondischargeable under § 523(a)(4).

17. If you contend that TGL reasonably believed that Matloff had sufficient assets to repay the Facility upon exercise of his guaranty obligations, produce all documents or communications supporting or evidencing that belief.