# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| Darren Scott Matloff, | § | Case No. 19-44253-mxm-7 |
| | § | |
| Debtor. | § | |
| | § | |
| Triumphant Gold Limited, | § | Adv. No. 19-04127-mxm |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| Darren Scott Matloff, | § | |
| Defendant. | § | |

### REPLY IN SUPPORT OF MOTION TO COMPEL DISCOVERY RESPONSES

Darren Scott Matloff ("*Matloff*") hereby replies to the response [Docket No. 23] (the "*Objection*") filed by Triumphant Gold Limited ("*TGL*") in opposition to Matloff's *Motion to Compel Discovery Responses* [Docket No. 18] (the "*Motion to Compel*") and respectfully states as follows:

## I.
## THE MOTION TO COMPEL WAS PROPERLY FILED

**A.    A motion to compel is the proper vehicle to obtain a ruling on discovery objections.**

1.    At the outset, TGL takes issue with the very procedural mechanism by which Matloff seeks a ruling on TGL's objections. *See* Objection ¶ 1-2 (characterizing the motion as asking the Court to read out of the federal rules "the ability to object to an Interrogatory or Request for Production on virtually any basis"). But an objection to a discovery request is only the beginning of the exercise. Once an objection is lodged, the interrogating party has two choices—to *concede* the objection (either implicitly by inaction or explicitly by withdrawing or modifying the request) or *challenge* the objection (by filing a motion to compel).

Page 1

2. An example of the *first* option—concession—is TGL's reaction to Matloff's objection to TGL's RFP No. 2. Finding the request to be vague, Matloff conferred with TGL prior to the response deadline and, getting no further clarification from TGL as to what communications were sought, objected to the discovery request as vague and overbroad. *See Heller* (proper to object and not respond further). In response to that objection, TGL elected to withdraw that RFP.

3. In the Motion to Compel, Matloff chose to *challenge* TGL's objections—many of which cloud the accompanying responses that TGL provided—and request a ruling from the Court. After several conferences comprising multiple hours of discussion, TGL made no more than minimal changes to its responses and elected to largely stand on the accompanying objections. Having found itself at a stalemate with TGL, Matloff filed the Motion to Compel, which is the proper and *necessary* procedural device to obtain a ruling on TGL's pending objections. *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 552 (5th Cir. 1980), *abrogated on other grounds by Associated Gen. Contractors of Cat, Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 536 n. 33, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) ("An objection to an interrogatory is not passed on by a court unless a motion to compel under Rule 37(a) is made."); *see also Garcia v. Champion Glass, LLC*, 2014 BL 493453, at *7 (W.D. Tex. Oct. 23, 2014) (citing *Pan-Islamic Trade Corp.*); *Ritzmann v. Nalu Kai, Inc.*, 523 F. Supp.2d 564, 568, 2007 BL 137868, at *3 (S.D. Tex. 2007) (same). Indeed, Matloff would waive his right to the discovery it seeks if it *failed* to move to compel an answer. *Calderon v. Presidio Valley Farmer's Ass'n*, 863 F.2d 384, 389 (5th Cir. 1989).

4. Indeed, "since 1970, a Rule 37(a) motion to compel has been the proper vehicle for resolving objections to interrogatories under Federal Rule of Civil Procedure 33 and requests for production under Federal Rule of Civil Procedure 34." *Weaver v. Stringer*, 2019 BL 120714, at *2 (S.D. Ala. Apr. 04, 2019) (setting forth a detailed discussion of the applicable rules); *see also* Fed. R. Civ. P. 33(a) advisory comm. n. (1970) ("If objections are made, the burden is on the interrogating party to move under Rule 37(a) for a court order compelling answers..."); Fed. R. Civ. P. 34 advisory comm.

n. 1970 (noting the same procedure for compelling responses under Rule 33 is applicable to Rule 34); Fed. R. Civ. P. 37(a) advisory comm. n. 1970 ("Under existing Rule 33, a party objecting to interrogatories must make a motion for court hearing on his objections. The changes now made in Rule 33 and 37(a) make it clear that the interrogating party must move to compel answers, and the motion is provided for in Rule 37(a) . . . Amendments of Rules 34 and 37(a) create a procedure similar to that provided for Rule 33."). The Motion to Compel is *precisely* the correct procedural device both to compel the production of documents responsive to Matloff's discovery requests and to obtain a ruling on TGL's outstanding objections.

**B.    The parties conferred extensively prior to the filing of the Motion to Compel.**

5.    TGL is equally incorrect in its assertion that Matloff failed to meaningfully confer. In the instant dispute, Matloff's counsel conferred *extensively* with TGL's counsel on the substance of TGL's discovery responses and objections before proceeding to file the Motion to Compel.[1] These efforts, which are described in detail both in the Motion to Compel and in the accompanying certificate of conference, included—

(a)    sending the April 15 Letter to TGL identifying several deficiencies in TGL's Original Responses and asking TGL withdraw its improper objections and produce all responsive documents;

(b)    participating in telephone conferences with counsel (lasting more than two and a half hours in total) on April 27, 2020, and May 7, 2020;

(c)    sending TGL's counsel a follow-up email (Exhibit E) on April 28, 2020 detailing various action items for TGL's follow-up, including the identification of any alleged acts of embezzlement and larceny separately from alleged acts of false representation and fraud and production of documents responsive to RFP Nos. 2-5 (regarding TGL's due diligence efforts); and

---

[1] This is in addition to the multiple times Matloff's counsel contacted TGL's counsel to confer on the substance of TGL's discovery requests to Matloff.

Page 3

  (d) as described below, conferring with TGL's counsel on July 31, 2020, regarding certain statements made in the Objection that suggested the scope of the parties dispute might be narrower than previously thought.

6. Despite multiple conferences and amended discovery responses, the Second Amended Responses plainly show TGL's deliberate choice to hold firm to its position: to stand on its objections, to reaffirm its belief that the response to an interrogatory seeking information on fraud allegations is equally responsive to interrogatories concerning embezzlement and larceny, to refuse to even conduct searches for responsive documents, and to otherwise hold fast to its position. In the face of such intransigence, Matloff's counsel concluded that further conferences would not be productive and proceeded to file the Motion to Compel.[2]

7. Nor is it plausible that TGL's counsel "understood that . . . most, if not all of the issues the Motion raises were resolved by TGL's comprehensive responses." Response ¶ 10. As shown in the Motion to Compel and accompanying exhibits, TGL in its Second Amended Responses reaffirmed every one of its objections verbatim and, in addition, held firm to its decision to describe alleged false representations only in general terms, to refuse to even run searches specific to certain document requests, and to recycle interrogatory responses for topics ranging from false statement and fraud to embezzlement and larceny. During their telephone conferences, counsel specifically acknowledged their respective disagreements on the law and recognized that one or more of them may not be resolved through the parties' discussions. After multiple conferences in which Matloff's counsel specifically raised and asked TGL to remedy these deficiencies, TGL's current stated belief that previously incomplete and inconsistent responses are now sufficient is disingenuous at best.

---

[2] Indeed, it is unclear from the Objection what TGL believes a further conference would have achieved other than a further delay in the completion of discovery. Every single one of the issues raised in the Motion to Compel was raised by Matloff's counsel in both the April 27 and the May 7 conferences. Having been unsuccessful in their first two attempts to persuade TGL to change its position, there is little reason to believe that, as the saying goes, "third time's a charm."

Page 4

8. The very best evidence of the impracticability of further conferences is TGL's Objection itself. Rather than explain how Matloff's disagreements with TGL's responses and objections could have been easily resolved with another conference, TGL instead doubles down on its position, insisting once again that its objections should be sustained, its responses deemed sufficient, and the un-searched-for documents held to be irrelevant. TGL having held firm in its position through three sets of discovery responses and the Motion to Compel, the parties' dispute is ripe for a ruling from the Court.

## II.
## TGL MUST DECIDE WHAT THIS TRIAL IS ABOUT

9. In its original *Adversary Complaint* [Docket No. 4] (the "*Complaint*"), TGL challenges Darren Matloff's eligibility for a chapter 7 discharge under a variety of grounds, including under parts 2(A), 2(B), (4), and (6) of § 523 and under parts (2), (3), (4), and (7) of § 727. In support of its claims, the Complaint points to allegations of "bad acts" occurring throughout 2016, 2017, and well into 2018. *See*, *e.g.*, Complaint ¶¶ 18, 20, 21, 22-27, 34-39, 47, 49, 60. Notably, these allegations overlap a period of time that saw Rooftop Singapore produce two years of *audited* financials and countless financial reports under the supervision of its chief financial officer Thian Chew, who happened also to be closely affiliated with one of Rooftop Singapore's two senior secured lenders, Polar Ventures.

10. Critical to proving or disproving the merits of TGL's accusations is an understanding of, among other things: (i) precisely what false representations or financial statements believes TGL relied upon to extend credit; and (ii) to what extent those representations or statements were made by Mr. Matloff himself or by other authorized representatives of Rooftop Singapore, including its chief financial officer.

11. In a stunning course correction, however, TGL claims that such matters are not relevant to this proceeding because—

> The issue in this adversary proceeding is not whether the projections and financials were 100% accurate but rather whether they were misleading in that the entity structure to which Matloff asserted the financials related was either a

fabrication at Matloff's direction or Matloff's assertion to this Court as to the entity structure is wholly false. Moreover, it is the movement of money and the failure to keep records, in particular starting *after* T. Chew's departure, that TGL asserts are the most relevant facts to the discharge issues at play.

Objection ¶ 45. Despite the breadth of the Complaint, TGL seems to suggest here that the only real issues for trial concern (i) the legitimacy of the Rooftop enterprise's corporate structure and (ii) the movement of money and adequacy of records after Thian Chew resigned in April 2018. Thus, TGL contends, Matloff's discovery requests are not "relevant to the litigation at hand." *Id.* The problem, of course, is that the Complaint—and much of TGL's own discovery requests—devote substantial attention to events occurring *prior* to Thian Chew's resignation and assert distinct causes of action based on those events beyond what ¶ 45 describes.

12. If the scope of the dispute were as narrow as TGL now suggests in its Objection, TGL might be correct that certain of Matloff's discovery requests are no longer relevant to claims and defenses raised in this matter. That would also beg the question whether TGL now intends (or needs) to amend the Complaint to reflect its recent recharacterization of the live disputes.[3]

13. For example, if TGL claims that Rooftop's 2016 audited financial statements were not themselves false, but were used in furtherance of a fraudulent scheme, that implicates a very different claim for relief (under § 523(a)(2)(A) for "actual fraud") than if TGL also contended that the audited financials were themselves false statements "respecting the debtor's or an insider's financial condition" (thus implicating § 523(a)(2)(B)). Similarly, TGL's challenge of a particular transfer of funds implicates very different issues depending on whether it is being invoked as evidence of an overarching fraudulent scheme or whether it is being challenged as an act of embezzlement.

---

[3] It would also raise the question whether Matloff is entitled to recover costs incurred in answering and propounding discovery with respect to a complaint that TGL did not actually intend to pursue, but that is a matter for another day.

14. In an effort to obtain clarity on this crucial point, Matloff's counsel conferred with TGL's counsel on July 31, 2020, to determine whether this ¶ 45 in fact evidenced a narrowing in the scope of TGL's claims. Based on that conference, Matloff is informed that TGL still asserts *all* of the causes of action as pleaded in the Complaint. Given that, Matloff asserts that the vast breadth of claims asserted by TGL necessitates the discovery sought by Matloff in the Requests and submits that TGL's objections should be overruled.

### III.
### TGL'S DEFENSE OF ITS OBJECTIONS IS NO DEFENSE AT ALL

15. Finally, TGL makes three other particularly unexpected admissions in explaining its objections to Matloff's discovery requests that further reveal the insufficiency of its responses. These are addressed briefly below.

**A.     TGL's discovery obligation is not limited to only those documents on which it intends to rely.**

16. *First*, TGL claims repeatedly that it is not required to produce documents other than those upon which it will rely at trial. "As TGL's counsel has made clear to Matloff's counsel, TGL is not withholding any information it will seek to use in support of its claims." Objection ¶ 15; *see also* Objection ¶ 14 ("on which it intends to rely at trial"); ¶ 20 (claiming a request to produce "each" instance of misrepresentation is unduly burdensome "because it is not necessary to support [TGL's] claims"); ¶ 26 ("just the evidence on which TGL will rely at summary judgment or at trial"); ¶ 31 ("TGL intends to rely on such documents at trial"). According to TGL, this justifies its decision not to even search for documents responsive to several pending requests.

17. Subject to certain proportionality and other governors on its scope, Federal Rule of Civil Procedure 26 permits discovery "regarding any nonprivileged matter *that is relevant to any party's claim or defense*." Fed. R. Civ. P. 26(b)(1) (emphasis added). Indeed, the advisory committee notes to Rule 26 emphasize that "[t]he purpose of discovery is to provide a mechanism for making relevant information available to the litigants.

Page 7

'Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.'" Fed. R. Civ. P. 26 advisory comm. n. (1983) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

18. The standard for relevancy is liberal. *Daubert v. Merrell Down Pharm., Inc.*, 509 U.S. 579, 587 (1993) ("The Rules' basic standard of relevance thus is a liberal one."). Under Federal Rule of Evidence 401, "relevant evidence" is defined as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The standard thus extends equally to evidence that would *prove* a fact regarding a party's claim or defense as it does to evidence that would *disprove* that fact. Evidence of liability is equally relevant with evidence that tends to disprove liability, and evidence of an element of a claim is equally relevant with evidence tending to disprove that element, and evidence of an element of a defense is equally relevant with evidence tending to disprove that defense.

19. But discovery is not limited only to those documents upon which the responding party intends to rely at trial. Discovery may be taken "regarding any nonprivileged matter that is relevant to *any party's claim or defense*," and the logic of this breadth is manifest. This necessarily includes evidence that may be contradictory or exculpatory, that the producing party may not intend to rely upon, or that nevertheless may tend to disprove its claims or prove another party's defenses. Indeed, it is as probable that documents in a plaintiff's possession may support the defendant's defenses as it is that they may support the plaintiff's own claims—and vice versa— and the discovery rules have never been construed to permit a litigant to produce only those documents relevant to that litigant's case-in-chief.

20. To the extent TGL has withheld documents from production on the theory that it must only produce those documents upon which it will rely at trial, TGL's objections must be overruled and TGL ordered to produce all nonprivileged documents in its possession, custody or control.

**B. TGL cannot wait until trial to identify those acts for which Matloff's discharge should be denied.**

21. *Second*, TGL claims it is still developing facts to support the claims asserted in the Complaint, and only expects to be able to fully articulate those claims at trial. *See*, *e.g.*, Objection ¶ 20 ("will be able to support its assertion at trial"); ¶ 21 ("will be able to support its assertion at trial on this point"). Accordingly, TGL argues, objections to contention interrogatories should be sustained "for so long as discovery remains substantially ongoing." Response ¶ 17.

22. With good reason, there is no legal support—and TGL cites none—for this questionable argument. The plaintiff in a breach-of-contract suit would never be permitted to insist that the alleged breach will be revealed only at trial, nor to insist that the alleged breaches will be revealed only after the completion of discovery. Indeed, such a tactic would call into question the factual underpinnings of the complaint itself. *See* Fed. R. Civ. P. 9011(b)(3) (requiring that allegations in a filed pleading must have evidentiary support or, if specifically so identified, are likely to have evidentiary support after reasonable opportunity discovery). Yet TGL has so far been unwilling or unable to identify a single, specific act of larceny or embezzlement, and TGL continues to insist that its other interrogatory responses cannot be deemed complete while discovery remains ongoing. In other words, there may yet be other alleged false representations or financial statements, for example, that TGL previously relied upon to extend credit *but is presently unable to identify*. It is no more reasonable for TGL to stand upon such objections than it would be for the breach-of-contract suit to insist that the alleged breach will be revealed only at trial.

23. The federal rules do permit a party to object to an interrogatory as a "contention interrogatory," but it is equally true that courts routinely overrule such objections given the usefulness of such interrogatories "in narrowing and sharpening the issues." Fed. R. Civ. P. 33 advisory comm. n. (1970); *see also Id.* advisory committee n. (2007) (revising the rule to make clear that "[o]pinion and contention interrogatories are used routinely"). Here the interrogatories propounded by Matloff are largely aimed at ensuring

Page 9

a complete recitation of those "bad acts" for which TGL contends that Matloff's discharge should be denied.

24. These interrogatories are particularly important where, as here, TGL contends that Matloff's denial of discharge is warranted on the basis of one or more false misrepresentations, acts of fraud, false financial statements, or acts of embezzlement, larceny, or defalcation. Furthermore, since the various counts of the Complaint itself do nothing more than track the relevant portions of § 523 and § 727, these interrogatories are crucial to understanding precisely what "bad acts" Matloff is—and is not—alleged to have performed. Matloff must be able to rely on the allegations in the Complaint and TGL's responses to discovery to properly prepare his defense within the context of those "bad acts" he is alleged to have committed. *Compare Day v. City of Indianapolis*, 380 F.Supp. 812, 823 (S.D. Ind. 2019) ("[F]or a contention interrogatory to serve as a useful tool to minimize the uncertainty of [a plaintiff's] claims, the defendant must be able to rely on the answers the plaintiff gives.").

25. If TGL is to be correctly understood, only at the trial itself will Matloff have a complete picture of each false representation he is alleged to have made, each false financial statement he is alleged to have prepared, each record he is alleged to have destroyed, and each act of embezzlement or larceny he is alleged to have committed. Only at the trial itself will Matloff know for certain what allegations of fraud he must refute. But if Matloff must wait until the completion of TGL's discovery to see final responses to his own discovery requests, Matloff will presumably need some further discovery *after* that date to properly obtain any relevant discovery relevant to whatever additional allegations TGL makes between now and then.

26. Trial by ambush is never countenanced in any court; TGL's objections must therefore be overruled.

C. **TGL cannot claim a common interest privilege with the Debtor's own chief financial officer.**

27. *Finally*, perhaps the most unexpected argument advanced by TGL is that its refusal to produce communications between itself and Rooftop Singapore's former chief financial officer Thian Chew are protected

by both the attorney-client privilege and the common interest privilege. *See* Objection ¶ 44-47. If true, this is a matter of grave concern. It seems more likely that TGL's argument is based on the mistaken conflation of Thian Chew and Polar Ventures and must be overruled on that basis.

28. If TGL and Rooftop Singapore's chief financial officer enjoyed a relationship such that their communications can be considered privileged, the implications of such a relationship could expose Mr. Chew to breach of fiduciary duty claims and call into question the legitimacy of TGL's actions throughout the history of its lending relationship to Rooftop. But of course, any "common interest" that exists or existed as between TGL and Polar could not possibly have extended to Thian Chew during his stint as Rooftop's chief financial officer, nor could TGL's attorney-client privilege have been preserved in any communication to which Thian Chew was a party. TGL's position here makes no sense.

29. The explanation most likely lies in the fact that TGL has erroneously conflated Thian Chew with Polar Ventures. Overlooking the fact that Matloff presently only seeks TGL's communications with Thian Chew,[4] TGL nevertheless re-urged in its Objection (as in the First Amended and Second Amended Responses) that any such communications are protected by the attorney-client privilege and the common interest privilege, among others. As there could be no conceivable privilege to permit TGL to withhold communications between itself and Rooftop Singapore's chief financial officer, TGL's objection must be overruled and TGL ordered to produce responsive document.

30. Privilege issues aside, these communications are highly relevant despite TGL's characterization of them as just a "red herring." Objection ¶ 45. As noted above, a critical element to certain of the claims pleaded in the Complaint is whether TGL in fact relied on any allegedly false representation or false financial statement and whether that reliance was

---

[4] In the course of their discovery conferences, Matloff agreed in the parties' conferences to narrow the scope of RFP No. 10 to seek only "All Communications between any TGL Entity and Thian Chew pertaining to the Facility" instead of all communications between "any TGL Entity and any Polar Entity." Motion to Compel, Ex. E; Response ¶ 36.

Page 11

reasonable. Given that Thian Chew acted as Rooftop Singapore's chief financial officer during much of the relevant time period, communications between Thian Chew and TGL may be critical to determining the extent to which TGL may in fact have relied on Thian Chew or others in the Rooftop organization.

31. If TGL and Thian Chew were truly acting at arm's length, then communications between TGL and Mr. Chew may show the extent to which TGL looked to Mr. Chew—as opposed to Mr. Matloff—for information on the financial condition of the Rooftop entities. Such communications may also show whether TGL ever sought confirmation from Mr. Chew regarding statements made by Mr. Matloff, or whether Mr. Chew ever followed up with TGL to clarify or "clean up" statements made by Mr. Matloff. Because the reasonableness of TGL's reliance on certain representations and financial statements is an element of more than one of TGL's claims, any such communications would be directly relevant to show whether and to what extent TGL relied on Matloff or—as is more probable—the chief financial officer.[5]

32. Against this backdrop, there can be no plausible justification for TGL's refusal even to conduct a search for documents responsive to this request, and the fact that TGL has not yet conducted a search for responsive documents means TGL cannot sustain its burden to show that production of responsive documents would impose an undue burden. To the contrary, the request is narrowly tailored to communications with Thian Chew pertaining to the Facility, and relevant to the claims and defenses asserted in this adversary proceeding. Given Matloff's discovery in the Rooftop files of at least two emails in which TGL discussed litigation strategy with Thian Chew—going so far in one email as to instruct Mr. Chew to come to a scheduled meeting "as rooftop"—TGL's refusal to even search for responsive documents supports an inference that more such emails exist that are exculpatory to Matloff (if not even more damning to TGL's position).

---

[5] Of course, if TGL and Thian Chew were *not* acting at arm's length, and were in any way conspiring to the detriment of Matloff or the Rooftop entities, that is equally important—and relevant—information.

Page 12

# IV.
# CONCLUSION

33. TGL is clearly convinced that Rooftop's business collapse was caused—not by bad luck or negligence or the cash crunch caused by its own collection efforts—but by some alleged deceitful conduct by Matloff. Fifteen months after Rooftop Singapore submitted itself to the Bankruptcy Court and thirteen months after Matloff did the same, TGL has taken extensive discovery, been granted access to the financial records of the Rooftop enterprise, and examined Matloff repeatedly under oath. Despite all of that, TGL is still unwilling to affirmatively state that it knows what it relied on in extending credit, that it knows what funds it believes to have been embezzled or stolen, or that it knows what records it believes to have been destroyed. TGL is entitled to its theories, but it is *not* entitled to drag on this process indefinitely and leave Matloff unable to properly mount a defense to a dischargeability action that means to leave him saddled with debts to be carried for the rest of his life.

WHEREFORE, Matloff requests entry of an order overruling TGL's objections and granting the relief requested in the Motion to Compel.

Dated: July 31, 2020
      Dallas, Texas

Respectfully submitted,

| **SPECTOR & COX PLLC** | **REED SMITH LLP** |
|---|---|
| By: /s/ *Sarah M. Cox* | By: /s/ *Michael P. Cooley* |
| Sarah M. Cox (SBN 24119316) | Michael P. Cooley (SBN 24034388) |
| Spector & Cox, PLLC | Devan J. Dal Col (SBN 24116244) |
| 12770 Coit Road, Suite 1100 | 2850 N. Harwood St., Ste. 1500 |
| Dallas, TX 75251 | Dallas, Texas 75201 |
| T: 214-310-1321 | T: 469.680.4200 |
| F: 214-237-3380 | F: 469.680.4299 |
| sarah@spectorcox.com | mpcooley@reedsmith.com |
| | ddalcol@reedsmith.com |

*Attorneys for the Defendant*

## CERTIFICATE OF SERVICE

  I hereby certify that, on July 31, 2020, a true and correct copy of this document was served via the Court's Electronic Case Filing (ECF) system on all parties registered to receive electronic service, including counsel for Plaintiff.

                */s/ Michael P. Cooley*
                Michael P. Cooley